IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FERNANDO DIAZ, | § | |
| TDCJ # 00617918, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | EP-13-CV-292-KC |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

In a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 4), Petitioner Fernando Diaz ("Diaz"), a state prisoner at the Preston E. Smith Unit in La Mesa, Texas, challenges Respondent William Stephens's ("Stephens") custody over him based on a 1994 conviction in the 120th District Court of El Paso County, Texas, for capital murder.[1]  A jury found Diaz guilty "as a party to capital murder in the course of burglary" and he received a life sentence.[2]  Diaz now claims the prosecution suppressed exculpatory hair evidence and, in any event, the evidence was insufficient to support his conviction.  In an answer, Stephens argues Diaz's claims are time barred, procedurally barred, or meritless.  In a reply, Diaz concedes "his involvement in committing the burglary,"[3] but re-asserts his actual innocence claim "[b]ecause the state prosecutors suppressed crucial DNA evidence, that was exculpatory material, and

---

[1] *State v. Diaz*, Cause No. 920D02197 (120th Dist. Ct. El Paso Cnty., Tex. April 6, 1994), *aff'd*, *Diaz v. State*, No. 08-94-00103-CR (Tex. App.—El Paso Mar. 3, 1995, no pet.).

[2] Br. for the State 1, *Diaz v. State*, No. 08-92-00262-CR (Tex. App.—El Paso, filed June 24, 1993), ECF No. 11-5, p. 2, filed Feb. 12, 2014.

[3] Pet'r's Reply 14, ECF No. 22, filed Apr. 17, 2014.

favorable to petitioner."[4]  He also argues his "claim of actual innocence will bypass the . . .

limitations period."[5]  After carefully reviewing the record and for the reasons discussed below,

the Court finds Diaz is not entitled to § 2254 relief.  The Court will accordingly deny Diaz's

petition and decline to certify his issues for appeal.

**BACKGROUND AND PROCEDURAL HISTORY**

Early in the morning on July 7, 1991, Violet Alice Dove ("Dove"), then seventy-five

years old, suffered a brutal and violent death in her home on Savannah Avenue in El Paso, Texas.

According to the autopsy report, Dove "died as a result of intrathoracic bleeding due to two stab

wounds to the left chest involving the aorta, main pulmonary artery and the right ventricular wall

. . . inflicted with a blunt, pointed, instrument."[6]  Discovered "[i]n the deceased's hand were . . .

strands of hair."[7]

A subsequent investigation led police officers to suspect Diaz, then twenty years old, had

participated in the crime.  On July 24, 1991, they arrested Diaz and took him to a police station

for questioning.  After they advised Diaz of his rights, he volunteered that while drinking with a

friend named Ruben Minjarez ("Minjarez"), the two agreed to burglarize some nearby houses.

Diaz claimed that after they broke into a home on Savannah Avenue, they discovered an elderly

woman sleeping inside.  Diaz added that when she awoke, he watched Minjarez choke, hit, and

stab the woman:

> I saw Ruben [Minjarez] on top of her in bed.  He was choking her with his

---

[4] *Id.* at 1.

[5] *Id.* at 3 (citing *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928, 1935 (2013)).

[6] Trial R. (First Trial), Vol. XIV (Medical Examiner's Autopsy, July 8, 1991), ECF No. 16-5, p. 141, filed Feb. 12, 2014.

[7] Pet'r's Pet. 6, ECF No. 4, filed Sept. 27, 2013.

hands. I saw the lady kicking and moving around. He also stabbed her with some scissors. The scissors he got them from the oposite [sic] bedroom. I would like to say that before Ruben stabbed the lady he hit her with his fist about 4 or 5 times on the face. That I can remember, Ruben stabbed the lady about 3 times in the chest.[8]

Minjarez, after being advised of his rights, also admitted that the two had agreed to burglarize some houses, but maintained that it was Diaz, not him, who had hit and stabbed the elderly woman they found inside:

Fernie [Diaz] and I then went in to the old ladies room and were looking into the drawers. Fernie was getting one of the clock radios that was by her bed and she woke up. The old lady grabbed Fernie's arm and that's when Fernie hit her on the face with his fist. She was straggling [sic] with him so he told me to help him. I went over and grabbed her arms and she kept moving a lot. Fernie grabbed one of her arms and I had my right hand on her neck and was trying push it back because she kept moving around. I then saw Fernie with some scissors in his hand. He then started stabbing her somewhere on the chest.[9]

Strands of hair found in Dove's hand "were submitted by the State for testing along with known samples of [Diaz's] hair."[10] Believing the tests were " 'inconclusive' under visual examination," Diaz's attorneys at his first trial filed a motion for the State to provide funds for a forensic "expert for more extensive analysis."[11] At a subsequent hearing on the motion, the prosecutor explained the "test results were not inconclusive. In fact [the State's expert] can

---

[8] Trial R. (Second Trial), Ex. Vol. ( Statement of Fernando Diaz, July 24, 1991), ECF No. 12-3, p. 64, Feb. 12, 2014; Trial R. (First Trial), Vol. XIV, ECF No. 15-5, p. 132, Feb. 12, 2014. The trial court admitted Diaz's statement into evidence as State's Exhibit 50 in both trials.

[9] Trial R. (First Trial), Vol. IV, Pre-Trial Motions (Statement of Ruben Minjarez, July 27, 1991), ECF No. 12-7, p. 78, filed Feb. 12, 2014.

[10] Pet'r's Pet. 11 (Motion to Provide Funds for Expert Assistance Forensic Expert), ECF No. 4, filed Sept. 27, 2013.

[11] *Id.*

definitely say that the hair [discovered in Dove's hand] . . . does not belong to either one of the Defendants."[12]  The prosecutor continued, "[i]t's not going to get any better for the Defendant with the [Texas Department of Public Safety] serologist stating that the hair doesn't belong to this particular Defendant."  The prosecutor, at the request of Diaz's counsel, then stipulated "that the hair found in the palm of the deceased is not [Diaz's] hair and is in no way related to [Diaz], and . . . [the prosecution] will not attempt to introduce that hair into evidence for any purpose whatsoever."[13]

A jury convicted Diaz as a party to capital murder in the course of a burglary, and on May 5, 1992, the trial court sentenced him to life in prison.  The Court of Appeals for the Eighth District of Texas reversed the judgment and remanded the case for a new trial.[14]  At the retrial, a second jury found Diaz guilty of capital murder and on April 6, 1994, the trial court again sentenced him to life in prison.  The Eighth Court affirmed the trial court's judgment on March 3, 1995,[15] and Diaz did not pursue a petition for discretionary review with the Texas Court of Criminal Appeals.

Diaz says he filed a motion for deoxyribonucleic acid ("DNA") testing of the hair samples with the trial court on February 11, 2013.  The record shows Diaz also mailed an application for a writ of mandamus to the Texas Court of Criminal Appeals on March 28, 2013,

---

[12] Trial R. (First Trial), Vol. VI, Pre-Trial Motions, ECF No. 12-9, p. 15, filed Feb. 12, 2014.

[13] *Id.*

[14] *Diaz v. State*, No. 08-92-00262-CR (Tex. App.—El Paso Nov. 3, 1993, no pet.), ECF 11-3, filed Feb. 12, 2014.

[15] *Diaz v. State*, No. 08-94-00103-CR (Tex. App.—El Paso Mar. 3, 1995, no pet.) (not designated for publication), ECF No. 11-2, filed Feb. 12, 2014.

-4-

but the Court denied leave to file the motion pursuant to *Padilla v. McDaniel*,[16] because Diaz should have filed the petition with the intermediate appellate court.  Nothing in the record indicates Diaz ever followed up on his motion for DNA testing with the proper court.

Diaz filed a state habeas application challenging his conviction on June 28, 2013.  On August 28, 2013, the Texas Court of Criminal Appeals denied the application without written order.  Diaz submitted the instant federal petition on September 9, 2013.

Diaz concedes that he "committed the offense of burglary of a habitation" with Minjarez on July 7, 1991.[17]  He maintains that "[d]uring the same criminal episode, Ruben Minjarez committed the offense of capital murder."[18]  Diaz claims that it was not until March 4, 2013, that he received a copy of a "Motion to Provide Funds for Expert Assistance Forensic Expert" filed by his lawyer on March 27, 1992.[19]  In the motion, his lawyer asks for funds to test hair evidence collected from the crime scene and Diaz.  According to Diaz, "this evidence was suppressed and never revealed in my favor to prove my innocence in April of 1992.  Furthermore, nothing was ever mentioned about this evidence during my second trial in 1994."[20]  Diaz therefore alleges two grounds for relief.  He first claims the prosecution suppressed exculpatory DNA evidence at both of his trials.  DNA evidence, according to Diaz "would have proven that petitioner [was]

---

[16] *See Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003) ("We hold that when a court of appeals and this court have concurrent, original jurisdiction of a petition for a writ of mandamus against the judge of a district or county court, the petition should be presented first to the court of appeals unless there is a compelling reason not to do so.")

[17] Pet'r's Mem. of Law 1–2, ECF No. 4, filed Sept. 27, 2013.

[18] *Id.* at 2.

[19] Trial R. (First Trial), Vol. I, p. 9–10, ECF No. 12-4, filed Feb. 12, 2014.

[20] *Id.* at 5.

innocent completely of this crime."[21]  Diaz asks the Court to order "DNA testing to prove his innocence . . ."[22]  He then argues the evidence was insufficient to support his capital murder conviction.

## APPLICABLE LAW

"[C]ollateral review is different from direct review,"[23] and the writ of habeas corpus is "an extraordinary remedy"[24] reserved for those petitioners whom "society has grievously wronged."[25]  It "is designed to guard against extreme malfunctions in the state criminal justice system."[26]  Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow.  "Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[27]  They must generally defer to state court decisions on the merits[28] and on procedural grounds.[29]  They may not grant relief to correct errors of state constitutional, statutory,

---

[21] Pet'r's Pet. 6, ECF No. 4, filed Sept. 27, 2013.

[22] *Id.*

[23] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[24] *Id.*

[25] *Id.* at 634.

[26] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[27] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[28] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[29] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

or procedural law, unless a federal issue is also present.[30]

Furthermore, claims under § 2254 are generally subject to a one-year statute of limitations.[31]  The limitations period runs from the latest of four different events: (1) when "the judgment became final," (2) when "the impediment to filing an application created by the State action in violation of the Constitution and laws of the United States is removed, if the applicant was prevented from filing by such State action," (3) when "the constitutional right asserted was initially recognized by the Supreme Court . . . and made retroactively applicable to cases on collateral review," or (4) when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[32]  "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings . . . [including] the time limits upon its delivery . . . ."[33]

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . the. . . expiration of the statute of limitations."[34]  However, "[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[35]

---

[30] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[31] *See* 28 U.S.C. § 2244(d)(1) (2006) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.").

[32] *Id.* §§ 2244(d)(1)(A)–(D).

[33] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original).

[34] *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).

[35] *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

Moreover, "in making an assessment 'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence."[36]

Further, the limitations period is tolled by statute when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[37]  Additionally, the limitations period is not jurisdictional and is subject to equitable tolling.[38]

Equitable tolling is not, however, available for "'garden variety claims of excusable neglect.'"[39]  It is justified only "'in rare and exceptional circumstances.'"[40]  Such circumstances include situations in which a petitioner is actively misled by the respondent "'or is prevented in some extraordinary way from asserting his rights.'"[41]  Moreover, "'[e]quity is not intended for those who sleep on their rights.'"[42]  Rather, "'[e]quitable tolling is appropriate where, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of

---

[36] *Id*. (quoting *Schlup*, 513 U.S. at 332).

[37] 28 U.S.C. § 2244(d)(2).

[38] *See Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010) ("[W]e hold that § 2244(d) is subject to equitable tolling in appropriate cases.").

[39] *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

[40] *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

[41] *Id.* (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).

[42] *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)).

his claim.'"[43]  Furthermore, a petitioner has the burden of proving that he is entitled to equitable

tolling.[44]  In order to satisfy his burden, he must show "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way'" of timely filing his

§ 2254 motion.[45]  Finally, "[t]he decision to invoke equitable tolling is left to the discretion of the

district court" and reviewed only for an abuse of discretion.[46]  The limitation and the tolling

provisions of § 2244 "promote[] the exhaustion of state remedies while respecting the interest in

the finality of state court judgments."[47]

    With these principles in mind, the Court turns to Diaz's complaint.

## ANALYSIS

### A.  Actual Innocence

    It appears from the face of Diaz's petition that it is untimely.  However, Diaz suggests his

actual innocence may serve as a gateway through which his petition may pass the expiration of

the limitations period.  He notes the State visually compared the hair found in Dove's hands with

the hair taken from his body shortly after her murder, but adds he only recently discovered a

defense motion from his first trial that requested funds for more extensive analysis of the hair.[48]

---

[43] *Id.* at 715 n.14 (quoting *Pacheco v. Rice*, 966 F.2d 904, 906–07 (5th Cir. 1992)).

[44] *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000).

[45] *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

[46] *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

[47] *Carey v. Saffold*, 536 U.S. 214, 220 (2002) (quoting *Duncan v. Walker*, 533 U.S. 167, 178 (2001)).

[48] Pet'r's Mem. of Law 4–7, ECF No. 4, filed Sept. 27, 2013.

This additional testing, including DNA testing, apparently never occurred.  Diaz argues that a DNA comparison of the victim and his hair would "exculpate him after all these years."[49]

The Supreme Court recognizes an equitable exception to the presentation of claims barred by the statute of limitations where a petitioner demonstrates his actual innocence.[50]  But a petitioner must meet the demanding standard for actual innocence presented in *Schlup v. Delo* in order for a court to consider his time-barred claims.[51]

Under the *Schlup* standard, a petitioner must demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of newly presented evidence of his innocence.[52]  This is not a test for legal sufficiency—it is not sufficient to merely show that a reasonable doubt exists in the light of the new evidence—but rather, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[53]  Thus, " 'actual innocence' means factual innocence, not mere legal insufficiency."[54]  Moreover, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."[55]

---

[49] Pet'r's Pet. 6, ECF No. 4, filed Sept 27, 2013.

[50] *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1935 (2013).

[51] *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995)).

[52] *Schlup*, 513 U.S. at 327.

[53] *Id.* at 326.

[54] *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

[55] *Schlup*, 513 U.S. at 324.

The record shows Diaz was aware of the hair evidence before his first trial.  Indeed, at a pretrial hearing, Diaz gave consent for the State to take sample hairs from him for comparison with the ones found at the crime scene.[56]  Furthermore, at a subsequent pretrial hearing on the motion for funds for further testing of the hair, the prosecution and defense attorneys discussed the existing test results and the analyst's determination that the hairs recovered from Dove's hand were not from either Diaz or his accomplice.[57]  Moreover, the prosecutor willingly stipulated the hair from the crime scene did not match the hair from Diaz or his accomplice,[58] and the trial court admitted a copy of the analyst's report into the record at the hearing.[59]  Consequently, the record shows Diaz knew or should have known about the test results before his first trial.  Further, the analyst's report was in the record and available for all to see, including Diaz's attorney in his preparation for the second trial.  Thus, there is no evidence that any of Diaz's attorneys were unaware of the hair samples and the testing, and there is no evidence that the State withheld evidence at either of his trials.

Furthermore, Diaz clearly fails the *Schlup* test.  First, he presents no newly discovered evidence to support his actual innocence claim.  Second, because his claim of actual innocence based on the hair evidence lacks any merit, he cannot demonstrate that it is more likely than not that no reasonable juror would have convicted him.[60]  Finally, the fact that Diaz waited over

---

[56] Trial R. (First Trial), Vol. V, Arraignment, ECF No. 12-8, pp. 9–10, 14–16, filed Feb. 12, 2014.

[57] Trial R. (First Trial), Vol. VI, Pre-Trial Motions, ECF No. 12-9, p. 15, filed Feb. 12, 2014.

[58] *Id.*

[59] *Id.* at 31–32.

[60] *Schlup*, 513 U.S. at 327.

sixteen years before he asserted his actual innocence claim severely diminishes the reliability of that claim.[61]

Diaz has not, therefore, persuaded the Court " 'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' "[62] Accordingly, he has not shown the Court that he is actually innocent of the capital murder offense.[63]

### B.    Limitations

The record does not indicate that any unconstitutional "State action" prevented Diaz from filing for federal habeas corpus relief prior to the end of the limitation period.[64]  Although Diaz suggests the State withheld exculpatory evidence at both of his trials, as discussed above, the record does not support his allegation.  Further, Diaz's claims do not concern a constitutional right recognized by the Supreme Court after his trial and made retroactive to cases on collateral review.[65]  Moreover, the fact that Diaz's first attorney knew about the hair and filed a motion for independent testing proves the State informed the defense of the existence of the hair found at the murder scene.  This defense motion has been in the record since Diaz's attorneys filed it on March 27, 1992, and it was available thereafter to Diaz's second attorney, as well as Diaz himself.  Thus, his claims were discoverable, through the exercise of due diligence, by the time

---

[61] *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1935 (2013).

[62] *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

[63] *Id.*

[64] 28 U.S.C. § 2244(d)(1)(B).

[65] *Id.* § 2244(d)(1)(C).

the Eighth Court denied his second direct appeal.[66]  Therefore, the relevant event for determining

the limitations period in the instant case was "the date on which the judgment became final by

the conclusion of direct review or the expiration of the time for seeking such review."[67]

The Eighth Court affirmed Diaz's conviction on March 3, 1995.[68]  Because Diaz did not

file a petition for discretionary review with the Texas Court of Criminal Appeals, his conviction

became final thirty days later—on April 2, 1995—when the time for seeking further direct review

expired.[69]  Therefore, Diaz's federal writ petition was due one year later—on April 2,

1996—absent statutory tolling.[70]

Because Diaz's judgment became final prior to the enactment of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), however, he had one full year from its

enactment on April 24, 1996, to seek federal habeas corpus relief.[71]  Thus, Diaz had until April

24, 1997, to file a timely petition.  Diaz constructively filed his petition on September 9, 2013,

---

[66] *Id.* § 2244(d)(1)(D); *Diaz v. State*, No. 08-94-00103-CR (Tex. App.—El Paso Mar. 3, 1995, no pet.) (not designated for publication), ECF No. 11-2, filed Feb. 12, 2014.

[67] *Id.* § 2244(d)(1)(A).

[68] *Diaz v. State*, No. 08-94-00103-CR (Tex. App.—El Paso Mar. 3, 1995, no pet.), ECF No. 11-2, filed Feb. 12, 2014.

[69] *Gonzalez v. Thaler*, 132 S. Ct 641, 653–54 (2012); *Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003) (explaining that finality is determined by when the time for filing further appeals expires); Tex. R. App. P. 68.2(a).

[70] 28 U.S.C. § 2244(d).

[71] *Flanagan v. Johnson*, 154 F.3d 196, 200 (5th Cir. 1998) (holding that "petitioners like Flanagan, whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief").

the day on which he placed it in the prison mail system.[72]  Thus, Diaz filed his petition over

sixteen years beyond the deadline.  It is therefore untimely, and must be denied, unless statutory

or equitable tolling applies.

Diaz's state application for a writ of habeas corpus, filed on June 28, 2013,[73] did not toll

the limitation period because he filed it well after the limitations period expired.[74]  As a result,

Diaz is not entitled to statutory tolling.[75]  Therefore, Diaz's claims are time-barred, and must be

denied, absent equitable tolling .[76]

The Fifth Circuit has long held that equitable tolling is available only in "rare and

exceptional circumstances."[77]  It applies principally where the plaintiff is "actively misled by the

defendant about the cause of action or is prevented in some extraordinary way from asserting his

rights."[78]  Nothing in the record suggests the State actively mislead Diaz about his case or

---

[72] Pet'r's Pet. 10, ECF No. 4, filed Sept. 27, 2013.  A *pro-se* prisoner's habeas-corpus petition is constructively filed when the prisoner signs and presumably delivers the papers to prison authorities for mailing to the district court.  *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998)).

[73] State Writ p. 25, WR-79,332-02, ECF No. 16-8, filed Feb. 12, 2014.

[74] *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired.").

[75] 28 U.S.C. § 2244(d)(2).

[76] *Id.* § 2244(d).

[77] *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *Flores v. Quarterman*, 467 F.3d 484, 486 (5th Cir. 2006) (citing *Felder v. Johnson*, 204 F.3d 168, 170 71 (5th Cir. 2000) (citation omitted)).

[78] *Flores*, 467 F.3d at 487 (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (citation omitted)).

-14-

prevented him from asserting his rights.  Given that the basis for his claim concerning DNA testing was covered at his first trial and contained in the record, Diaz cannot show any rare or exceptional circumstance that prevented him from bringing this claim earlier.

Moreover, "[i]n order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief."[79]  "[E]quity is not intended for those who sleep on their rights."[80]  In this case, Diaz allowed over fifteen years to elapse between the denial of his appeal and his alleged filing of a motion for DNA testing.  Furthermore, Diaz admits in his pleading that he did not obtain the basis of his claim—the "Motion to Provide Funds for Expert Assistance Forensic Expert" filed in the trial court on March 27, 1992—until 2013.[81]  Diaz was anything but diligent in pursuing his claims.

The Court accordingly finds that Diaz's petition is time-barred, that he is not entitled to equitable tolling, and that it need not further address the merits of his claims.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[82]  Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[83]  In other

---

[79] *Coleman*, 184 F.3d at 403.

[80] *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)).

[81] Pet'r's Mem. of Law 4, ECF No. 4, filed Sept. 27, 2013.

[82] 28 U.S.C. § 2253(c)(1) (2006).

[83] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[84] Although Diaz has not yet filed a notice of appeal, this Court must nonetheless address whether he is entitled to a certificate of appealability.[85]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[86]  In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[87]  To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[88]  Here, Diaz is not entitled to a certificate of appealability because reasonable jurists would not find debatable the Court's conclusions that his petition is time-barred and that he is not entitled to equitable tolling.

---

[84] *See* 28 U.S.C. §2253(c)(3) ("The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required[.]"); *see also United States v. Kimler*, 150 F.3d 429, 431, and n.1 (5th Cir. 1998) (explaining it is well established that a circuit judge may address an issue not certified by a district court if the petitioner makes (1) an explicit request, and (2) a substantial showing of the denial of a constitutional right).

[85] *See* 28 U.S.C. foll. 2254 Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[86] 28 U.S.C. § 2253(c)(2).

[87] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[88] *Id.*

## CONCLUSION AND ORDERS

After carefully reviewing the record and for the reasons stated above, the Court concludes that Diaz's petition is time-barred, and that he is not entitled to § 2254 relief.  Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Petitioner Fernando Diaz's request for DNA testing is **DENIED**.

**IT IS ALSO ORDERED** that Petitioner Fernando Diaz's petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 4) is **DENIED** and the above-captioned cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner Fernando Diaz is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that all pending motions, if any, in this cause are **DENIED AS MOOT**.

**SO ORDERED.**

**SIGNED** this 20th day of October 2014.


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE